No. 33,702

THE STATE BANK OF WINFIELD, Trustee, *Appellee,* v. M. B. LIGHT, LEWIS BOYS, and ———, Successor in Trust of A. F. Dauber, Deceased, Trustees; BLANCHE S. TURNER, *Appellant.*

(78 P. 2d 865)

Opinion filed May 7, 1938.

*Harold W. Herrick* and *Olin B. Scott,* both of Winfield, for the appellant.

*S. C. Bloss,* of Winfield, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action, commenced July 30, 1935, for the foreclosure of a mortgage on the Manning block, consisting of two and one half lots and the buildings erected thereon in the city of Winfield, to realize upon four series of building bonds secured by the mortgage.

The court appointed a receiver to ascertain the names of all holders of such bonds, the amounts thereof and the dates to which interest had been paid thereon, and to serve them by publication notice of the pendency of the foreclosure action. Several of the bondholders intervened by leave of court, and all the issues raised were tried by the court. Extended findings of fact were made by the trial court. Conclusions of law were made thereon, and judgment was rendered for the plaintiff in the sum of $197,400, with interest, which was

made a first lien on the premises described in the mortgage, and it was further ordered that the holders of certain bonds definitely described were not entitled to recover anything in the action. Among such was Mrs. Blanche S. Turner, holder of bond No. 4 of series "D" for $20,000. She filed a motion for a new trial, and after the same was overruled she appealed to this court. The cross-appeals filed by other intervenors have been dismissed, so the appeal is limited to the findings, conclusions and judgment, excluding this $20,000 bond held by the appellant, Blanche S. Turner.

The plaintiff in the action is "The State Bank, a Corporation of Winfield, Kansas, Trustee." The mortgagors were M. B. Light, Lewis Boys and A. F. Dauber, trustees. They executed the mortgage and signed the building bonds secured thereby. They were all officers of the State Bank. The Fidelity Trust Company was an organization of the stockholders of the State Bank before that bank was merged with the Progressive State Bank, but the consolidated bank continued business under the name of "The State Bank." It owned, before the merger, a bank building on the east half of lot 12, adjoining the Manning block subsequently purchased. The mortgage stated that it was given to secure four series of bonds, "A," "B," "C," and "D"—125 bonds in series "A," 33 in "B," 96 in "C" and 46 in "D."

The trust agreement, made the same day the mortgage was executed, stated that the trusteeship which was held by the three officers of the bank above named, as trustees, was formed for the purpose of assisting and financing the erection of an annex to the present State Bank building and to protect the bondholders until such time as the said bank liquidated or retired the entire issue of bonded indebtedness.

The trial court found that the State Bank was organized in 1905, and in 1916 and 1917 erected its bank building on the east half of lot 12. On February 1, 1918, it purchased and received a deed for the Manning block, paying $28,000 therefor. At the time it made this purchase it had a paid-in capital of $100,000, an unimpaired surplus of $50,000, and its bank building was valued at $50,000. On October 9, 1923, the bank conveyed to the three officers, Light, Boys and Dauber, as trustees, the Manning block for one dollar consideration, which deed was filed for record August 9, 1924. It contained the following clause:

"This instrument does not evidence an actual change of ownership but is for the purpose of placing the legal title in the grantees who have heretofore held the equitable title."

The consolidation with the Progressive State Bank took place on August 9, 1924. Actual work on the construction of the annex was commenced in July, 1926, and continued without interruption until its completion.

On January 1, 1927, a trust agreement, the mortgage and a large number of "State Bank building bonds" were signed. The bonds differed only in amount, and in some instances the amount was not specified. The court found the cost of the new building to be $210,-837, but that amount included from $12,000 to $14,000 that had been used for repairs, refurnishing and equipment of the bank. The court, in finding 17, stated:

"State Bank building bonds were issued, sold and paid for amounting in the aggregate to $212,400. The following is a list of the number, name of holder, the amount, and the date to which coupon interest was paid upon each series of bonds, constituting in the aggregate the above sum of $212,400 par value."

This statement was followed by a list of the bonds under each series. In series "D" was bond No. 4, in the name of Mrs. Turner, in the amount of $20,000, with interest paid to July 1, 1934. This was followed by a total amount of all four series in the sum of $212,-400, and that was followed by these lines:

"These bonds were sold by Light and Boys, president and cashier, respectively, of the bank. The money paid for the bonds was deposited in the bank 'new building account.' "

The following is part of finding 19:

"On or about January 1, 1928, the Fidelity Trust Company, of Winfield, Kansas, was organized by the stockholders of the State Bank of Winfield. M. B. Light, president of the State Bank, thereupon became and thereafter was the president and chief executive officer of the Fidelity Trust Company. At the time of the organization of the trust company there was issued and turned over to it, bonds of series 'D,' numbered 1, 3 and 5, aggregating $60,000, and also bond No. 4 of series 'D,' of the par value of $20,000. The trust company paid nothing for these bonds aggregating $80,000. The trust company thereupon issued $80,000 par value of its capital stock to the stockholders of the State Bank, for which the stockholders of the bank paid nothing.

"With reference to the $20,000 bond, No. 4, it does appear that from the account in the bank carried in the name of Light, Boys and Dauber, trustees, there was transferred to the account in the bank carried as new building account, the sum of $20,000, but from these entries the court is unable to find that anything was ever paid to anyone by the Fidelity Trust Company for bond No. 4, or that the stockholders of the trust company ever paid to said

company anything for the stock of the company that was issued to them and based upon its possession, and claimed ownership of bonds numbers 1, 3, 4 and 5, representing $80,000.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Thereafter bond No. 4 was sold by the trust company to Mrs. Turner and she paid the trust company the sum of $20,000 therefor. M. B. Light was at the time a brother-in-law of Mrs. Turner, was her business agent, handled her bank account in the State Bank, and wrote checks thereon *as agent* for Mrs. Turner, and at the same time M. B. Light was the chief executive officer of the State Bank, of the Fidelity Trust Company, and so-called trustee under the deed of October 9, 1923, and while so acting and with full knowledge that certificate No. 4 had been issued and delivered by himself and others acting as trustees of the Fidelity Trust Company without consideration, and as agent of Mrs. Turner, sold such certificate to Mrs. Turner and paid her money in the sum of $20,000 to be transferred to the account of the Fidelity Trust Company. The knowledge of M. B. Light in this transaction the court finds to be the knowledge of Mrs. Turner, and that she therefore purchased bond No. 4 with knowledge that it had been delivered by the trustees to the Fidelity Trust Company without consideration and that she was getting nothing for her money.

"On this bond No. 4 interest was paid by the bank in the sum of $5,500."

### Finding 30 is as follows:

"The Fidelity Trust Company was organized and all the stockholders of the same were also stockholders in the State Bank."

### The following is the fifth conclusion of law:

"The holders of the bonds enumerated and listed in finding of fact No. 18 and also of No. 4 of series 'D' for $20,000, are not entitled to recover anything in this action."

### The following are the first and seventh paragraphs of the journal entry of judgment:

"1. That the plaintiff, the State Bank as trustee, do have and recover of and from the defendants as trustees judgment against the defendants as such trustees in the amount of one hundred ninety-seven thousand, four hundred dollars ($197,400), together with interest thereon at the rate of five percent (5%) per annum until paid, being an amount equal to the face or par value of all bonds listed in finding of fact No. 17, except No. 34 of series 'D' for fifteen thousand dollars ($15,000). That said judgment constitutes a first lien on the premises described in the mortgage herein foreclosed, to wit:  .  .  .  .

"7. That the holders of bonds enumerated and listed in finding of fact No. 18, and also Mrs. Blanche S. Turner, as holder of bond No. 4, of series 'D,' for twenty thousand dollars ($20,000), are not entitled to recover anything in this action and take nothing herein. That the plaintiff do have and recover from the defendant trustees its costs herein as taxed by the clerk in the sum of $————."

Accepting the findings of fact as made by the trial court, we have difficulty in reaching the same conclusion of law as the trial court did in conclusion No. 5, to the effect that the holder of bond No. 4 of series "D" for $20,000 is not entitled to recover anything in this action. In finding No. 19 the court grouped bond No. 4, series "D," with bonds Nos. 1, 3 and 5 of the same series, and found that the trust company paid nothing for these bonds, and then added that the trust company issued its stock at par value to the stockholders of the bank and that the stockholders paid nothing therefor. It further added as to bond No. 4 that the records in the bank showed that there was transferred from the account carried in the name of the three trustees to the new building account the sum of $20,000. The court again expressed its inability to find that there was anything ever paid either for the bond or the stock. In the 17th finding it was found that the bonds were sold by the president and cashier of the bank, and the money that was paid for the bonds was deposited in the bank in the "new building account," and that bond No. 4 of series "D" for $20,000 was listed in the number sold, making a part of the total of $212,400.

The very fact, as the finding shows, that there was a transfer from one account to another, viz., the "new building account," of $20,000 for this particular bond No. 4 is a conclusive finding that a consideration was paid for it. The confusion seems to come from the fact that the officers of the bank were the trustees who issued the bonds and were also officers and directors of the Fidelity Trust Company, a corporation. The doubt expressed as to the existence of a consideration between the trustees issuing the bond and the Fidelity Trust Company purchasing the same with stock of the trust company was probably magnified by the fact that the same individuals represented both of them. To recapitulate, the findings are that $20,000 was transferred from one account to the "new building account" for this bond No. 4, and that this bond was "turned over" to the Fidelity Trust Company for capital stock of the trust company of par value. It is not unusual for a corporation to purchase bonds and other property with shares of its capital stock. Capital stock of a duly incorporated company is a valid consideration for the purchase or transfer of other valuable property. Other findings show the amount of the bonds "issued, sold and paid for" amounted to $212,400, and that a bond in the amount

of $15,000 should properly be deducted therefrom, which would leave bonds, including No. 4, issued, sold and paid for in the sum of $197,400, which was the amount for which judgment was rendered.

Other findings showed the cost of the building to have been about $210,837, from which sum there should be deducted from $12,000 to $14,000, which would leave the real cost of the building to be from $196,837 to $198,837, so that the finding of bond issues, sold and paid for, as above computed at $197,400, is between the figures reached by the cost calculation. If bond No. 4 is not to be included in the judgment for $197,400, but to be deducted therefrom, it would give the holders of bonds in the amount of $177,400 the right to receive the benefit of a judgment for $20,000 more than the amount of their claims.

The specific and definite findings of fact made by the trial court are: That money was transferred in the bank for the payment of bond No. 4; that the bond was delivered to the trust company for stock in that company, the stock being of par value; and that Mrs. Turner paid the trust company $20,000 for this bond. On these specific and definite findings of fact we reach a different conclusion of law from that made by the trial court in conclusion No. 5.

We conclude that Mrs. Blanche S. Turner, the holder of bond No. 4, series "D," is entitled to recover thereon the same as other bondholders that were held entitled to recover on their bonds under the conclusions made and judgment rendered by the trial court.

The judgment is therefore reversed and the cause is remanded with instructions to include said bond No. 4, and Mrs. Turner, the holder thereof, as being entitled to proportionate participation in the benefits of the judgment with those in whose favor the judgment had been rendered.